**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| TIFFANY & CO., ROGER N. FARAH, ALESSANDRO BOGLIOLO, ROSE MARIE BRAVO, HAFIZE GAYE ERKAN, JANE HERTZMARK HUDIS, ABBY F. KOHNSTAMM, JAMES E. LILLIE, WILLIAM A. SHUTZER, ROBERT S. SINGER, and ANNIE YOUNG-SCRIVNER, | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 25, 2019 (the "Proposed Transaction"), pursuant to which Tiffany & Co. ("Tiffany" or the "Company") will be acquired by LVMH Moët Hennessy-Louis Vuitton SE ("Parent"), Breakfast Holdings Acquisition Corp. ("Holding"), and Breakfast Acquisition Corp. ("Merger Sub," and together with Parent and Holding, "LVMH").

2. On November 24, 2019, Tiffany's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with LVMH. Pursuant to the terms of the Merger Agreement, Tiffany's stockholders will receive $135.00 in cash for each share of Tiffany common stock they own.

3. On December 18, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Tiffany common stock.

9. Defendant Tiffany is a Delaware corporation and maintains its principal executive offices at 200 Fifth Avenue, New York, New York 10010.  Tiffany's common stock is traded on the New York Stock Exchange under the ticker symbol "TIF."

10. Defendant Roger N. Farah is Chairman of the Board of the Company.

11. Defendant Alessandro Bogliolo is Chief Executive Officer and a director of the Company.

12. Defendant Rose Marie Bravo is a director of the Company.

13. Defendant Hafize Gaye Erkan is a director of the Company.

14. Defendant Jane Hertzmark Hudis is a director of the Company.

15. Defendant Abby F. Kohnstamm is a director of the Company.

16. Defendant James E. Lillie is a director of the Company.

17. Defendant William A. Shutzer is a director of the Company.

18. Defendant Robert S. Singer is a director of the Company.

19. Defendant Annie Young-Scrivner is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Tiffany (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of October 31, 2019, there were approximately 119,943,050 shares of Tiffany common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. The Company was founded in 1837 and, along with its subsidiaries, designs, manufactures, and markets jewelry, watches, and luxury accessories.

29. The Company operates more than 300 TIFFANY & CO. retail stores worldwide.

30. On November 24, 2019, Tiffany's Board caused the Company to enter into the Merger Agreement with LVMH.

31. Pursuant to the terms of the Merger Agreement, Tiffany's stockholders will receive $135.00 in cash for each share of Tiffany common stock they own.

32. According to the press release announcing the Proposed Transaction:

LVMH Moët Hennessy Louis Vuitton SE ("LVMH"), the world's leading luxury group and Tiffany & Co. (NYSE: TIF) ("Tiffany"), the global luxury jeweler, today announced that the companies have entered into a definitive agreement whereby LVMH will acquire Tiffany for $135 per share in cash, in a transaction with an equity value of approximately €14.7 billion or $16.2 billion. . . .

Approvals and Timing

LVMH's acquisition of Tiffany has been approved by the boards of directors of both companies and the Tiffany Board of Directors recommends that Tiffany shareholders approve the transaction with LVMH.

The transaction is expected to close in the middle of 2020 and is subject to customary closing conditions, including approval from Tiffany's shareholders and the receipt of regulatory approvals.

Advisors

Citi and J.P. Morgan are serving as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to LVMH. Centerview Partners LLC and Goldman Sachs Co. LLC are serving as financial advisors and Sullivan & Cromwell LLP is serving as legal counsel to Tiffany.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

33. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

34. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

35. First, the Proxy Statement omits material information regarding the Company's financial projections.

36. The Proxy Statement fails to disclose: (i) all line items used to calculate (a) EBITDA and (b) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP

metrics.

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

38. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview") and Goldman Sachs Co. LLC ("Goldman").

39. With respect to Centerview's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; (ii) the forecasted fully taxed unlevered free cash flows of the Company over the period beginning October 31, 2019 and ending on January 31, 2025 and all underlying line items; (iii) the terminal values of the Company; (iv) Centerview's basis for applying an illustrative range of enterprise value to EBITDA multiples of 13.0x to 18.0x; (v) the Company's net debt; and (vi) the number of fully diluted outstanding shares of Company common stock.

40. With respect to Centerview's Analyst Price Target Analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Centerview in the analysis; and (ii) the sources thereof.

41. With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) Goldman's basis for applying illustrative one-year forward price to EPS multiples ranging from 18.5x to 23.3x; (ii) the individual inputs and assumptions underlying the discount rate of 7.4%; and (iii) the estimated dividends to be paid per share of common stock.

42. With respect to Goldman's Premia Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the premiums paid in the transactions.

43. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 6.5% to 7.5%; (ii) the estimates of unlevered free cash flow to be generated by the Company for the period from November 1, 2019 to January 31, 2025 and all underlying line items; (iii) the terminal values for the Company; (iv) Goldman's basis for applying a range of terminal year multiples of 12.0x to 15.0x; (v) the Company's net debt; and (vi) the implied total number of fully diluted Company common shares outstanding.

44. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. Third, the Proxy Statement fails to disclose the circumstances under which the "additional discretionary fee of up to approximately $16 million" is payable to Goldman, and whether the Individual Defendants intend to pay Goldman this fee.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Company's Board of Directors; (iii) Opinions of the Company's Financial Advisors; and (iv)

Certain Company Forecasts.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

### COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Tiffany**

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Tiffany is liable as the issuer of these statements.

51. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

52. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

54. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

55. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Tiffany within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Tiffany and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved

in the making of the Proxy Statement.

61. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 3, 2020　　　　　　　　　**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
　　Brian D. Long (#4347)
**OF COUNSEL:**　　　　　　　　　　　　Gina M. Serra (#5387)
　　　　　　　　　　　　　　　　　　　　300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**　　　　　　　　　　　　Wilmington, DE 19801
Richard A. Maniskas　　　　　　　　　　Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300　　　　Facsimile: (302) 654-7530
Berwyn, PA 19312　　　　　　　　　　　Email: bdl@rl-legal.com
Telephone: (484) 324-6800　　　　　　　Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com　　　　　　　　*Attorneys for Plaintiff*

11